FILED

2019 Sep-12  PM 04:06
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

| | |
|---|---|
| **JAMES G. DAVIS,** | |
| **PLAINTIFF,** | |
| **VS.** | **Case No.:** |
| **OCWEN LOAN SERVICING, LLC., THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS SUCCESSOR TRUSTEE FOR JP MORGAN CHASE BANK, N.A., AS TRUSTEE FOR NOVASTAR MORTGAGE FUNDING TRUST, SERIES 2005-3, TRANS UNION, LLC; EQUIFAX INFORMATION SERVICES, LLC and EXPERIAN INFORMATION SOLUTIONS, INC.** | |
| **DEFENDANTS.** | |

---

## COMPLAINT

---

**COMES NOW** Plaintiff JAMES G. DAVIS, (hereafter "Plaintiff" or "Davis") by counsel, and as his Complaint against the Defendants named above, states as follows:

### PRELIMINARY STATEMENT

This action arises from the mismanagement of the mortgage loan account secured by the Plaintiff's home on Alice Street in Alexandria, Alabama, by Defendant Ocwen Loan Servicing, LLC. ("Ocwen"). Ocwen is not highly regarded as a servicer. Its wide-spread servicing abuses and mishaps are well documented in the press, and governmental enforcement actions, and its operational licensing has been suspended in some states. Ocwen has been the subject of administrative enforcement actions that address the same problems discussed here.

Ocwen relies heavily on automated systems, including its proprietary servicing system known as RealServicing. This system has been derided by regulators, as well as Ocwen's leaders, as fundamentally flawed and incapable of handling the information and tasks necessary to competently service loans. In this case, Ocwen's internal system continues to falsely show that the loan is in default. This resulted in the automatic reporting of false payment information to credit bureaus and has severely damaged the Plaintiff's credit.

Since the onset of these problems, Mr. Davis has made many attempts to have the issues corrected. This included many calls to Ocwen's servicing department, often speaking with representatives with poor English skills and no ability to address, much less fix the problems. Plaintiff also has sent letters directed to Ocwen's designated address for receipt of Notices of Servicing Errors under the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601 *et seq.* ("RESPA") detailing the problems. Ocwen was required to reasonably investigate the errors described in the letters and make appropriate corrections. It failed to do so. This failure is consistent with findings by regulatory agencies of a fundamental failure to adequately investigate and correct servicing errors.

Finally, Plaintiff sent dispute letters to credit bureaus, including Experian, Equifax, and Trans Union. Each of the bureaus was required to forward the disputes to Ocwen. Ocwen and each of the bureaus was required to reasonably investigate the disputed information and correct the reporting to reflect the real payment history. However, inaccurate information is still being reported by Ocwen.

Plaintiff asserts claims against for multiple violations of the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601 *et seq.* ("RESPA"), the Fair Debt Collection Practices Act, 15 U.S.C. 1692 ("FDCPA") and the Fair Credit Reporting Act, 15 U.S.C. 1681 ("FCRA"), as well as state law, claims.

2

**JURISDICTION AND VENUE**

1.      This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question), 15 U.S.C. § 1640, 15 U.S.C. 1692k, 12 U.S.C. § 2617 and 28 U.S.C. § 157(b).

2.      Venue is proper hereunder 28 U.S.C. § 1409 because the events giving rise to Plaintiff's cause of action occurred in this district.

**PARTIES**

3.      Plaintiff is a resident of Calhoun County, Alabama, and is a consumer as defined by 15 U.S.C. § 1692a(3).

4.      Defendant Ocwen Loan Servicing, LLC ("Ocwen") is a corporation formed outside the State of Alabama, with its principal place of business in Florida.

5.      Ocwen's sole or principal business is mortgage loan servicing.  As a mortgage servicer, a regular part of Ocwen's business is the collection of money owed to a separate entity, which is the actual lender or creditor concerning the mortgage loan.  Ocwen sends collection letters and places collection calls as a regular part of its business. Ocwen uses U.S. mail and interstate wire communications to conduct its business. Also, when Ocwen obtained the Plaintiff's loan for servicing, the loan was considered by the lender to be in default. Concerning Plaintiff's loan, Ocwen was at all times a "debt collector" as defined by 15 U.S.C. §1692a(6).

6.      Ocwen is also a mortgage servicer as is defined by 12 U.S.C. § 2605(i)(2).

7.      Defendant The Bank of New York Mellon aka The Bank of New York, as Successor Trustee for JPMORGAN CHASE BANK, N.A., as Trustee for NovaStar Mortgage Funding Trust, Series 2005-3 NovaStar Home Equity Loan Asset-Backed Certificates, Series 2005-3 ("Mellon") is the owner of Plaintiff's loan.

3

8.      Defendant Trans Union, LLC ("Trans Union") is a corporation formed under the laws of the State of Delaware, with its principal place of business in the State of Illinois.

9.      Trans Union is a "consumer reporting agency" as defined in § 1681 of the FCRA, regularly engaged in the business of assembling, evaluating, and dispersing information concerning consumers for furnishing "consumer reports," as defined in §1681a(d) of the FCRA, to third parties.

10.     Defendant Equifax Information Services, LLC ("Equifax") is a consumer reporting agency as defined in § 1681 of the FCRA, regularly engaged in the business of assembling, evaluating, and dispersing information concerning consumers for the purpose of furnishing consumer reports, as defined in § 1681a(d) of the FCRA, to third parties.

11.     Defendant Experian Information Solutions, Inc. ("Experian") is a corporation formed under the laws of the State of Ohio, with its principal place of business in the State of Ohio. Experian is a "consumer reporting agency" as defined in § 1681 of the FCRA, regularly engaged in the business of assembling, evaluating, and dispersing information concerning consumers for furnishing "consumer reports," as defined in § 1681a(d) of the FCRA, to third parties.

12.     Defendants Experian, Equifax, and Trans Union are sometimes referred to herein collectively as the "CRA Defendants."

## FACTUAL ALLEGATIONS

13.     On or about September 9, 2005, Plaintiff entered into a loan agreement with NovaStar Mortgage Inc. for $81,900 at 9.700%. The loan is secured by a mortgage on Plaintiff's property in Alexandria, Alabama and was recorded in Calhoun County, Alabama.  This is the Plaintiff's principal residence.

14.     Each payment is due on the first of each month but not considered late until after a grace period of fifteen (15) calendar days.  If and only if, the payment is not received within the

4

grace period, the Note allows the lender to charge a late fee in the amount of 5% of the overdue payment. Upon information and belief, under the terms of Ocwen's agreement with the owner of the loan, Ocwen is entitled to retain the full amount of each late charge received.

15.     Davis's Mortgage requires him to keep the property insured, and at all relevant times, he did. Ocwen, however improperly forced placed insurance several times, causing Plaintiff to lose time and money.

16.     The Note allows recovery of default-related expenses, including attorneys' fees, but only when the loan balance has been accelerated. The Note does not expressly allow recovery of inspection costs or property evaluation costs; it only allows expenses incurred in the enforcement of the Note, and only when that the debt has been accelerated.

17.     The mortgage allows recovery of certain costs "reasonable or appropriate" to protect the lender's interest in the property, but only in certain limited circumstances. Those circumstances include 1) after a default; 2) during a legal proceeding, such as bankruptcy; or 3) if the property is abandoned. The costs that can be incurred or collected under those circumstances include "reasonable attorneys' fee" related to the protection of the lender's interest in the property and its rights under the mortgage. However, such costs are not recoverable under the Note, where the debt has not been accelerated.

18.     Under the terms of the mortgage, each payment must be applied in the following order: first, to interest due under the Note; second, to principal payment under the Note; third, to the amount required to be paid into the escrow account for taxes and insurance; and fourth, to any other charges, including late fees or additional default-related costs.

19.     Plaintiff's mortgage is securitized, meaning it is held by an "investor," in this case, The Bank of New York Mellon aka The Bank of New York, as Successor Trustee for JPMORGAN CHASE BANK, N.A., as Trustee for NovaStar Mortgage Funding Trust, Series 2005-3 NovaStar

Home Equity Loan Asset-Backed Certificates, Series 2005-3, which pools the loan with many other loans for investment purposes.

20.     Over 60% of all mortgages in the U.S. are held in this way. These companies, such who hold securitized mortgages typically hire separate companies – mortgage servicers - to handle the day-to-day functions of the mortgage, including collecting and applying payments, managing the escrow account, among other things. This means that Borrower deals exclusively with mortgage servicers, not the actual owners of his loan, and depends on the abilities and competence of the servicer to properly handle payments, escrow accounts, pay-offs, transfers, and all other aspects of the mortgage loan.

21.     At the same time, Borrowers have no say in whether servicing will be transferred or to which company. Borrowers do not select or hire his servicers. Borrowers also cannot fire his mortgage servicer, no matter how abusive its practices or how dissatisfied the borrower becomes. Borrowers also have no control over the transfer of his loan from one servicer to another. Borrower is not consulted or even apprised of any pending servicing transfer. The only notice provided to a Borrower occurs just before or just after the actual transfer date. By that time the new servicer has already been selected. The actual transfer date is the last step of the transfer process and happens long after the decision to transfer is made. Thus, even though the choice of servicer fundamentally impacts that the experience a borrower regarding all aspects of his mortgage loan, that same borrower has zero input on when, whether or to which company his loan will be transferred.

22.     Since the transfer, more of Ocwen's servicing problems have come to light. In 2017 over 20 states issued "Cease and Desist Orders" addressing wide-spread servicing errors and abuses. That same year, the Consumer Finance Protection Bureau ("CFPB") publicized its finding from a years-long investigation of Ocwen's practices in an enforcement action filed in the Southern

6

District. The CFPB concluded that Ocwen's practices dating back to 2009 were fundamentally flawed, that it committed numerous violations of federal consumer laws and that's practices have harmed thousands of consumers. Among the problems highlighted by the CFPB is precisely the issues experienced by Plaintiff: misapplied payments, late posting of payments, the collection of illegal fees, false credit reporting and treatment of loans as defaulted when he is in fact current. Also, the CFPB found a wide-spread failure to adequately respond to Notices of Servicing Errors received from the borrower and the inability to reasonably investigate and correct those errors.

23.     A primary focus of the CFPB's analysis was the proprietary servicing platform known as RealServicing which Ocwen has used since 2009 to handle virtually aspect of servicing. This system was described in an internal email from Ocwen's Chief Executive Officer as "[a]n absolute train wreck." The RealServicing system was found by the CFPB to be fundamentally incapable of handling the information and tasks necessary to properly service loans consistently. Many of the problems associated with Ocwen's RealServicing system mirror that problems Plaintiff experienced. In 2015, Ocwen's officers admitted that "no systematic controls exist to prevent duplicative disbursements in RealServicing resulting in 6k-12k incidents per year." The CFPB also found that "Ocwen has routinely failed to send Borrower timely and accurate periodic statements, failed to timely and accurately credit and apply borrower payments, and failed to correct billing and payment errors" – all problems faced by Plaintiff and described below.

24.     All of these problems were compounded by Ocwen's decision to increase its profits by massively increasing the number of loans it was servicing. Between 2010 and 2012 Ocwen's residential servicing portfolio grew from 351,595 loans to 2,861,918. That's an increase of over 800%. The CFPB found that Ocwen's systems were woefully inadequate to handle this huge influx of loans, that Ocwen's clients were well aware of the problems and that thousands of Borrowers were harmed as a result. Ocwen has further expanded its servicing portfolio by

7

purchasing PHH in 2018, despite no demonstration that the underlying servicing problems have been remedied.

25.     On April 1, 2012 servicing of Plaintiff's mortgage loan was transferred to Ocwen. At the time of the servicing transfer to Ocwen, the loan was considered by the owner to be in default.

26.     Prior to the transfer of servicing to Ocwen Plaintiff had always paid his own taxes and insurance related to the home at issue.

27.     The home was insured, and the taxes were current at the time of the servicing transfer.

28.     On May 23, 2013, Mrs. Davis filed for relief under Chapter 13 and listed Ocwen as a creditor.

29.     The Davises made all their payments to the bankruptcy trustee and Ocwen in a timely fashion until Mrs. Davis passed away on March 30, 2015.

30.     Mr. Davis continued to make the Chapter 13 Plan payments until the case was dismissed on May 23, 2017.

31.     During the case, Ocwen filed a proof of claim for a pre-petition arrearage for $23,401.65.

32.     Mrs. Davis's confirmed. Chapter 13 Plan called for the trustee to make the current mortgage payments and proposed to cure any pre-petition arrearage.

33.     According to the Trustees final report, Ocwen was paid $42,973.25 as current mortgage payments and $15,853.12 on the mortgage arrearage. This left $7,548.53 still owing on the arrearage claim.

34.     On August 21, 2017, Mr. Davis paid Ocwen $8,082.16, bringing the loan current.

**Ocwen Continues to Hold Plaintiff in Default**

35.     Even though Mr. Davis had brought the loan current, Ocwen continued sending him statements indicating that he was behind on his payments.   Moreover, Ocwen continued charging him late fees and other fees, even though the loan was current.

36.     After making numerous telephone calls, Mr. Davis contacted Ocwen by letter during January and February of 2018 explaining that Ocwen had committed errors in servicing the account, including the fact that his loan was current. He also asked that his account be corrected. Those letters were directed to the address designated by Ocwen for receipt of Notices of Servicing Error ("NOE") under RESPA.

37.     Finally, on March 11, 2019, Mr. Davis sent Ocwen yet another NOE setting out other errors that Ocwen had committed while servicing such as the following:

> ➢     Force placing insurance when the property was already insured;

> ➢     Charges for property taxes that were already paid;

> ➢     Failing to credit regular mortgage payments appropriately;

> ➢     Improper charging of late fees, property inspection fees, and title searches.

38.     The NOE asked that the errors be corrected.

39.     Ocwen responded on March 21, 2019, stating that it had received the NOE.

40.     On March 21, 2019, the same day, Mr. Davis received a separate response.

41.     Ocwen only responded with a payment history, general statements about the loan, and denied that any error occurred.  No corrections were made.

42.     Each letter was a Notice of Servicing Error under 12 U.S.C. § 2505(e). They correctly identified the loan, borrower and property address; and each was sent to the address Ocwen designated for receipt of NOEs. Each letter adequately described the error and requested that Ocwen investigate and make corrections. Because the letter constituted an NOE as defined in RESPA, Ocwen was required to investigate the alleged error and correct the account reasonably.

That did not happen.

43.     Any reasonable investigation of the errors described in Plaintiff' NOEs would have revealed at least the following:

> That the Plaintiff had brought the loan current;

> That the Plaintiff made all his mortgage payments after bringing the loan current;

> That Plaintiff had adequately insured the property at all relevant times;

> That Plaintiff paid his property taxes without an escrow account.

**Ocwen's Failure to Correct its Error and Its Continued Wrongful Collections**

44.     Ocwen failed to appropriately respond to the NOEs and make corrections as required by RESPA and its implementing regulations. To the contrary, Ocwen continued to send late notices regularly, wrongfully impose default-related fees, inaccurately reported the status of his account to credit bureaus as delinquent, even though Plaintiff timely submitted his mortgage payments and the loan was in fact current.

**False Credit Reporting**

45.     As part of its servicing duties, Ocwen regularly reports to consumer reporting agencies ("CRAs"), including the "CRA Defendants" loan information, including payment history, regarding the Plaintiff' mortgage loan.

46.     Ocwen's servicing errors include the systematic and consistent false reporting of the status of the loan. This practice began as early as 2013 and continues to the date of the filing of this Complaint.

47.     The reported false delinquencies include thirty (30) day delinquencies for several months since June 2012. This inaccurate reporting has significantly impaired the Plaintiff's creditworthiness and his access to credit. Consequently, Plaintiff has suffered substantial credit damage.

48.     Mr. Davis submitted written disputes to the CRA Defendants and Ocwen directly challenging the accuracy of this information.  Mr. Davis's latest dispute was sent to the CRA Defendants on June 13, 2019.  In these dispute letters, Mr. Davis explained that the loan had been paid current and was not in arrears.

49.     Each of Mr. Davis's credit reporting disputes was forwarded to Ocwen by the CRA Defendants.  The dispute letters, together with the information in its file, provided ample evidence to Ocwen that the disputed credit reporting was false.  Ocwen nevertheless verified the reporting to the CRA Defendants, knowing that this would result in continued false information reported on Mr. Davis's credit file. Defendant also knew or should have known, that this false reporting would cause Mr. Davis financial harm.  Moreover, Ocwen continued furnishing the false and derogatory information to credit bureaus, including the CRA Defendants, with the knowledge that such information was false or, at a minimum, could not be verified through any reliable account records.

50.     Mr. Davis received responses from the CRA Defendants to each of his disputes.  In each response, the CRA Defendants failed to correct their reporting the Ocwen account.

51.     The information provided by Mr. Davis to the CRA Defendants conclusively demonstrates that the data reported by Ocwen is false and unreliable and that any reliance on Ocwen's verification is unreasonable. Ocwen did not provide the CRA Defendants with any information or documents refuting the evidence supplied by Mr. Davis, and its response to the CRA Defendants was limited to a bis unsubstantiated statement that the information reported was correct.

52.     The CRA Defendants failed to perform any reasonable independent investigation of Mr. Davis's disputes and the information provided in support of that dispute. The CRA Defendants' decision to rely on a biased and unsubstantiated statement by Ocwen, in the face of the information provided by Mr. Davis, was unreasonable and constituted a failure to perform the

duties required under the FCRA.   The CRA Defendants continued reporting the false and derogatory information to the credit bureaus, with the knowledge that such information was false or, at a minimum, had not been verified through any reliable account records.

53.     Each of Mr. Davis's dispute letters constitutes as a "consumer dispute" as defined by FCRA, and each dispute triggered the requirements set out in 15 U.S.C. § 1681i and 1681s-2(b).

54.     Ocwen failed to perform any reasonable investigation of Mr. Davis's disputes. Ocwen verified the reporting and continued furnishing the false and derogatory information to the CRA Defendants with the knowledge that such information was false or, at a minimum, could not be verified through any reliable records.

55.     The false and derogatory information reported regarding the Ocwen loan is lowering Mr. Davis's credit score and has caused him to be denied credit.

56.     Mr. Davis has suffered damages proximately resulting from the failure by Ocwen and the CRA Defendants to adequately investigate his disputes and cease the false reporting relating to his loans.   The injuries suffered by Mr. Davis include, but is not limited to, the loss of credit, loss of the ability to purchase and benefit from credit, mental and emotional pain, distress, anguish, humiliation, frustration, anxiety, and embarrassment.

57.     The harm suffered by Mr. Davis as a proximate result of Defendant's wrongful acts, as described herein, constitutes injury-in-fact and bears a close relationship with the types of harm for which the law has traditionally allowed redress under common law claims for breach of mortgage, accounting, fraud, defamation, libel, invasion of privacy, wanton collections, negligence, and willfulness.

## COUNT I
## (VIOLATIONS OF RESPA)

58.     This count is against Ocwen only.

59.     The allegations stated in all of the above paragraphs is incorporated as if fully asserted herein.

60.     Section 6(d) of the Real Estate Settlement Procedures Act ("RESPA."), 12 U.S.C. § 2605(e), grants Borrower the right to submit a "qualified written request" ("QWR") to the loan servicer requesting information and documents about the servicing of his loan.  That provision and its implementing regulations also grant Borrower the right to submit a "notice of servicing error" ("NOE"), identifying perceived errors committed by the servicer.  12 U.S.C. § 2605(e) and 12 C.F.R. § 1024.35.

61.     A QWR and NOE must sufficiently identify the borrower, the account and the perceived servicing error.  Id.

62.     RESPA requires the servicer takes specific actions upon receipt of an NOE, including the conducting a reasonable investigation of the error.  The servicer is also required to make all "appropriate corrections" to the account.

63.     Plaintiff's mortgage is a "federally related mortgage loan" within the meaning of 12 U.S.C. § 2602(1).

64.     Ocwen is a "servicer" concerning Plaintiff' loan as that term is defined in 12 U.S.C. § 2605(i)(2).

65.     Plaintiff's March 11, 2019 letter constitutes a "qualified written request" ("QWR") and a "notice of servicing error" ("NOE") within the meaning of 12 U.S.C. § 2605(e).  Ocwen was required to reasonably investigate the errors identified in the letter, make all appropriate corrections, and provide the information and documents requested.  Ocwen was also required to cease any derogatory credit reporting to CRAs for 60 days after the receipt of the NOE.

66.     Ocwen failed to correct the errors identified in that letter and on information and belief continued to report false and derogatory information to credit bureaus in further violation of 12 U.S.C. § 2605(e).

67.     Plaintiff has suffered actual damages as a proximate result of Ocwen's failure to comply with Section 2605(e), including mental anguish and emotional distress. Plaintiff' actual damages also include fees, interest and other charges incurred as a result of Ocwen's false belief that Plaintiff is in default; loss of equity as a result of Ocwen's failure to properly apply payments; and costs incurred in sending the NOE which, because of Ocwen's failure to correct its servicing error, were for naught.

68.     Ocwen has engaged in a pattern and practice of acts and omissions which violate Section 2605(e), including its repeated violations concerning Plaintiff, enough to allow recovery of statutory damages under Section 2605(f).

**WHEREFORE**, Plaintiff requests the Court enter a judgment against Ocwen for each violation of RESPA, awarding the following relief:

     a.  Statutory and actual damages as provided in 12 U.S.C. § 2605(f);

     b.  Reasonable attorney's fees, and costs expended in this proceeding; and

     c.  Such other and further relief as the Court may deem and proper.

### COUNT II
### (FDCPA VIOLATIONS)

63.     Plaintiff realleges and incorporates all preceding paragraphs as if fully set out herein.

64.     Defendant Ocwen is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6).

65.     Ocwen has violated the FDCPA in connection with its attempts to collect the account against Plaintiff. Ocwen's violations include, but is not limited to, the following:

    a.  Collecting and attempting to collect late fees it was not entitled to in violation of 15 U.S.C. § 1692f(1); and

    b.  Providing false information regarding the status of Plaintiff' loan in violation of 15 U.S.C. § 1692c.

66.    As a result of its violations of the FDCPA, Ocwen is liable to Plaintiff for actual damages, statutory damages, costs, and attorney's fees.

**WHEREFORE**, Plaintiff respectfully requests that judgment be entered against Defendant Ocwen for the following:

    a.  Actual and statutory damages under 15 U.S.C. 1692k;

    b.  Costs and reasonable attorney's fees under 15 U.S.C. § 1692k; and

    c.  Such other and further relief as this Court deems just and proper, the premises considered.

<u>**COUNT III**</u>
**(FCRA VIOLATIONS - OCWEN)**

67.    Plaintiff realleges and incorporate all preceding paragraphs as if fully set out herein.

68.    This is a claim by Mr. Davis against Ocwen for violations of the federal Fair Credit Reporting Act ("FCRA"), U.S.C. §1681 et seq.

69.    Ocwen furnishes credit information to consumer credit reporting agencies as FCRA defines those terms. Ocwen is subject to requirements of FCRA, including those duties set out in 15 U.S.C. §1681s-2(b).

70.    At all relevant times and at least as early as March 2018, Ocwen provided derogatory and false credit information relating to the Plaintiff's mortgage account to consumer reporting agencies ("CRAs"), including Equifax, Experian, and Trans Union. The CRAs reported this false and derogatory information to third parties, including Mr. Davis's potential lenders and

others who may be in a position of evaluating Mr. Davis's creditworthiness, credit standing, credit capacity, character, and general reputation.

71.     As stated above, Mr. Davis provided written disputes of this information to Equifax, Experian, and Trans Union.

72.     The disputes described herein each constitute a "consumer dispute," and each dispute triggered the requirements set out in 15 U.S.C. § 1681i and 1681s-2(b). Upon information and belief, information about each dispute was forwarded to Ocwen, as required by 15 U.S.C. § 1681i(a)(2).

73.     Information was available to Ocwen that should have, upon any reasonable investigation, informed it that it was reporting false information regarding Plaintiff's payment history. Despite its knowledge that the information being reported on Plaintiff's credit file was false and could not be verified by any reliable account records, Ocwen repeatedly verified the false and derogatory information as accurate, knowing that by doing so Plaintiff's creditworthiness would be damaged.

74.     Ocwen has taken actions which violate FCRA, specifically 15 U.S.C. §1681s-2(b). These actions include, but are not limited to, the following:

     a. Failing to fully, properly or reasonably investigate the Plaintiff's dispute of the reporting of the false and derogatory information;

     b. Failing to review all relevant information regarding Plaintiff's dispute and by disregarding that information after review;

     c. After receiving notice of Mr. Davis's dispute from the credit bureaus, continuing to submit false and derogatory information to consumer reporting agencies regarding Mr. Davis. Ocwen knew that information to be false, incomplete and not verifiable; and

d.   Failing to modify, delete, or permanently block the reporting of credit information regarding Plaintiff which Ocwen knew to be false, incomplete and not verifiable;

e.   Failing to accurately respond to Mr. Davis's disputes made through the CRA Defendants after receipt of that dispute.

f.   As a proximate result of this conduct, Mr. Davis suffered actual damages including, but not limited to, the loss of credit, loss of the ability to purchase and benefit from credit, mental and emotional pain, distress, anguish, humiliation, frustration, anxiety, and embarrassment.

75.   Ocwen's acts and omissions made in violation of the FCRA were willful, entitling Plaintiff to recover remedies provided in 15 U.S.C. §1681n.

76.   Ocwen's acts and omissions made in violation of the FCRA were negligently made, entitling Plaintiff to recover the remedies provided under 15 U.S.C. § § 1681o and 1681n.

**WHEREFORE**, Mr. Davis requests that this Court enter a judgment against Defendant Ocwen for negligent and willful violations of the FCRA and award Plaintiff actual damages, including damages for mental and emotional pain, distress, anguish, humiliation, frustration, anxiety, and embarrassment; statutory damages; punitive damages; costs and attorney's fees and further requests such other relief as the Court deems just and proper, the premises considered.

## COUNT IV
## (BREACH OF MORTGAGE AGREEMENT AND NOTE)

77.   Plaintiff realleges and incorporate all of the preceding paragraphs as if fully set out herein.

78.   This Count asserts claims against both Ocwen and Mellon

79.   Mellon discharges its duties and obligations under the subject mortgage and note through the actions of Ocwen, its mortgage servicing agent at all relevant times.

80.     The mortgage agreement requires that every payment accepted by the Lender be applied first to interest, then to principal and then to any amounts owed to escrow. Mellon, through the actions of its servicing agent Ocwen, has breached the mortgage agreement by failing to apply Plaintiff's payments received after the discharge correctly. Mellon has also, through the actions of Ocwen, charged late fees and other default-related charges in the absence of any delinquency and contrary to the provisions of the mortgage and note.

81.     Plaintiff has suffered damage as a proximate result of the said breach.

**WHEREFORE**, Plaintiff requests that this Court enter judgment against Ocwen and Mellon for breach of the mortgage and award him compensatory damages, including damages for mental anguish and emotional distress, plus interest and costs. Plaintiff further request such other relief as the Court deems just and proper, the premises considered.

**COUNT V**
**(FCRA VIOLATIONS-CRA DEFENDANTS)**

82.     Mr. Davis realleges and incorporates all of the preceding paragraphs as if fully set out herein.

83.     This count states claims for negligent and willful violations of the Fair Credit Reporting Act ("FCRA") against Defendant Experian, Equifax, and Trans Union under 15 U.S.C. § § 1681o and 1681n.

84.     Each of the CRA Defendants is a "consumer reporting agency" as that term is defined in FCRA.

85.     Each of the CRA Defendants have reported false and derogatory credit information on Mr. Davis's credit report relating to the above-described loan. This information was published to third parties, including Mr. Davis's potential lenders and others in a position to evaluate Mr. Davis's creditworthiness, credit standing, credit capacity, character, and general reputation. This false and derogatory information was, at all relevant times, reported by the CRA Defendants to said third parties by a "consumer report" as that term is defined in the FCRA.

86.     Mr. Davis notified the CRA Defendants that the information being reported on his credit file related to Ocwen was false, and he provided documentation supporting his dispute and requested that the data be corrected.

87.     Each of the CRA Defendants failed in its duty to reasonably investigate Mr. Davis's disputes and have merely parroted the false information supplied by Ocwen without performing any meaningful or reasonable independent investigation

88.     The CRA's failed to comply with the requirements of the FCRA in one or more of the following ways:

(a) By willfully and/or negligently failing, in the preparation of the consumer reports concerning Mr. Davis, to follow reasonable procedures to assure maximum possible accuracy of the information it published in its reports relative to Mr. Davis;

(b) By willfully and/or negligently failing to comply with 15 U.S.C. § 1681i, including, but not limited to, the willful and/or negligent failure to conduct any reasonable reinvestigation to determine wherein the disputed information was accurate, complete and correct;

(c) By willfully and/or negligently failing to delete data which each of the CRA Defendants knew or, had any reasonable investigation been conducted, should have known was inaccurate, incomplete, and/or could not be verified;

(d) By failing to adequately respond to Mr. Davis's disputes as required by 15 U.S.C. § 1681;

(e) By failing to exercise due cis and reasonable prudence in the preparation of its reports relative to Mr. Davis.

89.     As a proximate result of this conduct, Mr. Davis suffered actual damages including, but not limited to, the loss of credit, loss of the ability to purchase and benefit from credit; mental

and emotional pain, distress, anguish, humiliation, frustration, anxiety, and embarrassment.

90.     The CRA Defendants' acts and omissions made in violation of the FCRA were willful, entitling Mr. Davis to recover the remedies provided in 15 U.S.C. §1681n.

91.     The CRA Defendants' acts and/or omissions made in violation of the FCRA were negligently made, entitling Mr. Davis to recover the remedies provided under 15 U.S.C. § 1681o.

**WHEREFORE,** Mr. Davis requests that this Court enter separate judgments against Experian, Equifax, and Trans Union for negligent and willful violations of the FCRA and award him actual damages, including damages for mental and emotional pain, distress, anguish, humiliation, frustration, anxiety, and embarrassment; statutory damages; punitive damages; costs and attorney's fees. Mr. Davis further requests such other relief as the Court deems just and proper, the premises considered.

**It is respectfully** submitted on this the _5th_ day of September 2019.

EARL P. UNDERWOOD, JR. (6591E35E)
KENNETH J. RIEMER (RIEMK8712)
UNDERWOOD & RIEMER, P.C.
Attorneys for Plaintiff
21 South Section Street
Fairhope, Alabama 36532
Telephone: (251) 990-5558
E-mail: epunderwood@alalaw.com

PLAINTIFF DEMANDS A TRIAL BY JURY

**DEFENDANTS TO BE SERVED BY CERTIFIED MAIL AS FOLLOWS:**

Ocwen Loan Servicing, LLC
C/O Corporation Service Company Inc
641 South Lawrence Street
Montgomery, Al 36104

Trans Union, LLC
C/O Prentice-Davis Corporation System Inc.
150 South Perry Street
Montgomery, Alabama 36104

Equifax Information Services, LLC
C/O Corporation Service Company Inc
641 South Lawrence Street
Montgomery, Al 36104

Experian Information Solutions, Inc.
C/O C T Corporation System
2 North Jackson St., Suite 605
Montgomery, Al 36104

The Bank Of New York Mellon Aka The Bank Of New York , As Successor Trustee For Jp
Morgan Chase Bank, N.A., As Trustee For Novastar Mortgage Funding Trust, Series 2005-3 c/o
Bank of New York Mellon Corporation is a resident of the United States located at One Wall
Street, New York, New York, 10286, Attn: Legal Division 111 h Floor, Legal Process Unit